**Frieda ROHDE, Plaintiff,**

v.

**N. V. NEDERLANDSCH AMERIKAAN-SCHE STOOMVART MAATSCHAPPIJ sued herein as Holland-America Line, Ltd., Defendant.**

United States District Court
S. D. New York.

June 26, 1957.

Jacob Rassner, New York City, for plaintiff.

Burlingham, Hupper & Kennedy, New York City, for defendant.

BICKS, District Judge.

Plaintiff, a widow upwards of 70 years of age, sustained serious injuries as a result of a fall abroad the S.S. Ryndam, on April 8, 1954, while at sea en route from Baltimore, Maryland, to Rotterdam. She was a tourist class passenger making her first ocean voyage since she emigrated to this country at the age of 11. So much, and that (i) the incident occurred in the Palm Court, the main public room of the vessel, (ii) the wind, then, was force 7 from the south, southwest, the seas were force 6 from the south, southwest, and (iii) there was a high swell and the vessel rolled heavily and pitched moderately, is undisputed.

"The basis of defendant's liability in such an action as this is negligence. It is not an insurer but does owe the duty to exercise a very high degree of care for the safety of its passengers." Moore v. American Scantic Line, Inc., 2 Cir., 1941, 121 F.2d 767, 768.

### Findings of Fact

1. At all times material herein, (i) plaintiff was a citizen and resident of the State of Ohio, (ii) defendant was a foreign corporation licensed to and doing business in the State of New York, and (iii) defendant owned, operated, managed and controlled the S.S. Ryndam.

2. Plaintiff was a tourist class passenger for hire on the S.S. Ryndam on an 11-day voyage from Baltimore to Rotterdam, which commenced on April 1, 1954.

She shared a small cabin, No. 461 on B Deck, with two other passengers. The furnishings in the cabin consisted of sleeping accommodations for 3, a chest of drawers and a single chair, designed for utility rather than for comfort.

3. There were approximately 400 tourist class passengers and 25–35 first class passengers on the voyage. There were between 210 and 225 crew members assigned to the Steward's Department.

4. The main public room on the Ryndam was the Palm Court, located on the Promenade Deck, three decks above B Deck. The Palm Court had a maximum passenger seating capacity of about 250. It opened each day at about 8 a. m. and closed at midnight or 1 a. m. the following morning.

5. The Palm Court had a mezzanine which was one step above the floor level of the remainder of the room. The floor of the mezzanine had a rubber covering; the balance of the area was covered with linoleum. Before the journey was commenced the entire floor of the Palm Court was thoroughly cleaned, a fresh coat of "non-slipping" wax was applied and the surface was then polished. During the voyage the floor was brushed and polished every day between 6 and 8 a. m. and wax was applied only to dirty spots which occasionally appeared.

6. On April 7, 1954, after the ship had been at sea for 6 days, a storm was encountered. The storm continued throughout that day. On the succeeding day—the day of the incident—it grew more severe. Plaintiff had experienced little difficulty in getting about the ship during the storm; earlier that day she had been to the dining room for breakfast and lunch and had spent much of the morning in the Palm Court. The main public room was, she felt, the only place where she could sit comfortably and enjoy the company of her fellow passengers. While in the Palm Court that morning she noted that a passenger had fallen out of his chair as a result, she believed, of the rolling of the vessel. Aware of the stormy weather and the heavy sea, plaintiff debated with herself whether it would not be desirable if she spent the afternoon in her bunk. She finally decided to go to the Palm Court, get a magazine she had been reading that morning, and bring it back to her cabin. Plaintiff did not ask anyone, either a member of the crew or a fellow passenger, to get the magazine for her.

7. Between 1:30 and 2 p. m. on April 8, 1954, plaintiff walked from her cabin to the Palm Court. She climbed the three flights of stairs from B Deck to the Promenade Deck because the elevator had been shut down due to the rough weather.

8. There was a stewardess who seemed to be stationed at the bottom of one of the flights of stairs leading from B Deck to the Promenade Deck. She offered to assist the plaintiff but plaintiff declined the offer because she felt perfectly capable of getting about without assistance.

9. Plaintiff did not find the magazine where she had left it earlier in the day. She rested for a few minutes on a fixed couch on the Palm Court terrace, aft and starboard side of the room, and then decided to return to her cabin. She did not look for a Steward because she did not desire service or assistance of any kind. Plaintiff walked across the mezzanine about ten steps to the place where it was necessary to step down to the main floor of the room. At this point, there was a railing running along part of the mezzanine.

10. The floor at the place where plaintiff fell was not overly waxed, slippery or defective in any wise.

11. While plaintiff was in the course of stepping down from the mezzanine the vessel rolled, she reached for the railing, could not get a grip on it and fell forward onto the lower level.

12. The parties have stipulated that for purposes of this case their rights and liabilities shall be governed and determined by the general maritime law.

### Conclusions of Law

1. The Court has jurisdiction over the parties to, and the subject matter of this suit.

2. Plaintiff has failed to prove the negligence allegations of her complaint or that her accident was caused or contributed to by any negligence of the defendant or by any breach of duty owed her by the defendant. It is, therefore, unnecessary to decide the extent to which plaintiff was contributorily negligent, if at all.

3. The complaint is dismissed with prejudice.